**In the United States District Court
for the District of Kansas**

———————

Case No. 23-cv-02536-TC-TJJ

———————

MATTHEW AARON ESCALANTE,

*Plaintiff*

v.

CHARLES DROEGE,

*Defendant*

———————

**MEMORANDUM AND ORDER**

Matthew A. Escalante sued the Honorable Charles Droege, Chief Judge of the Kansas Tenth Judicial District, for various grievances arising out of Escalante's family law disputes. Doc. 1 at 4–7. Chief Judge Droege filed a motion to dismiss. Doc. 11. For the following reasons, that motion, Doc. 11, is granted in part and the case is dismissed.

**I**

**A**

**1.** To survive a motion to dismiss for failure to state a claim, the complaint need only contain "a short and plain statement … showing that the pleader is entitled to relief" from each named defendant. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Two "working principles" underlie this standard. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). First, a court ignores legal conclusions, labels, and any formulaic recitation of the elements. *Penn Gaming*, 656 F.3d at 1214. Second, a court accepts as true all remaining allegations and logical inferences and asks whether the claimant has alleged facts that make his or her claim plausible. *Id.*

A claim need not be probable to be considered plausible. *Iqbal*, 556 U.S. at 678. But the facts, viewed in the light most favorable to the claimant, must move the claim from conceivable to plausible. *Id.* at 678–80. The "mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

Plausibility is context specific. The requisite showing depends on the claims alleged, and the inquiry usually starts with determining what the plaintiff must prove at trial. *See Comcast Corp. v. Nat'l Assoc. of African Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020). In other words, the nature and complexity of the claim(s) define what plaintiffs must plead. *Cf. Robbins v. Oklahoma*, 519 F.3d 1242, 1248–49 (10th Cir. 2008) (comparing the factual allegations required to show a plausible personal injury claim versus a plausible constitutional violation).

**2**. Escalante is proceeding pro se, which requires a generous construction of his pleadings. *See Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009). That generosity means a court should overlook the failure to properly cite legal authority, confusion of various legal theories, poor syntax and sentence construction, or apparent unfamiliarity with pleading requirements. *Id.* But, importantly, it does not permit the construction of legal theories on Escalante's behalf or the assumption of facts not pled. *See id.; Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

**B**

This is the latest in a series of federal lawsuits Escalante has initiated against state court judges involved in his child custody dispute. *See Escalante v. Burmaster*, No. 23-CV-2471, 2023 WL 8373101, at *1 (D. Kan. Dec. 4, 2023) (noting at least four other cases have been dismissed); *see also Escalante v. Escalante*, No. 23-2491, 2024 WL 459837, at *1 (D. Kan. Feb. 6, 2024) (listing several of Escalante's other lawsuits). In this matter, Escalante invokes 42 U.S.C. § 1983. He asserts that Chief Judge Droege has violated the Fourteenth Amendment's due process clause and the Sixth Amendment right to counsel by entering

case transfer orders. Doc. 1 at 3.[1] His pleadings are convoluted. It appears that Escalante alleges that he did not receive notice that his state court cases were being or had been transferred to another forum. At other times, he alleges that the cases have not been transferred and the transfer notations were entered to deceive him. Doc. 1 at 4–5. He intimates as well that there was bias in his state cases because he is Hispanic. *Id.* at 5. And he further alleges that Chief Judge Droege made the transfers in "clear absence of jurisdiction." *Id.* He requests injunctive relief in the form of "removing All of" his cases "from the Johnson County judiciary." Doc. 1 at 7.

Chief Judge Droege filed a motion to dismiss. Doc. 11. He requests an award of attorney's fees and costs, *see* Docs. 12 and 21, as well as the extension of an existing bar in a separate case on Escalante filing motions without leave of a court. Doc. 12 at 5–10. Chief Judge Droege also requests fees and costs under Fed. R. Civ. P. 11. Doc. 21.

Escalante has filed a variety of documents. Among them are a motion to strike the motion to dismiss, Doc. 16, a request for recusal under 28 U.S.C. § 144 directed toward the judges overseeing his state court cases, Doc. 19, an amended request for recusal, Doc. 20, what appears to be an additional complaint against separate defendants, Doc. 23, and a motion for the civil rules to be suspended under Fed. R. Civ. P. 87, Doc. 24. His Rule 87 request is also styled as an application for a writ of habeas corpus and lists his children as "unlawfully held." Doc. 24 at 1. Another document is essentially a request to substitute "the DCF," presumably the Kansas Department of Children and Families, for Escalante and have it litigate on his behalf. *See, e.g.*, Doc. 25 at 9–10. And finally another document is styled a "notice" of Escalante's intent to have the DCF intervene. Doc. 26. This order treats these documents as motions requesting various types of relief.

## II

Escalante's pleadings fail to state a claim for relief. And in any case, Chief Judge Droege is immune for acts taken in his official capacity—no further analysis of any additional pleading infirmities (e.g., standing or collateral estoppel) is necessary. Accordingly, Chief Judge Droege's

---

[1] All document citations are to the document and page number assigned in the CM/ECF system.

motion to dismiss, Doc. 11, is granted. And all of Escalante's requests for relief are denied.

### A

Judicial immunity exists to protect judicial independence "by insulating judges from vexatious actions prosecuted by disgruntled litigants;" precisely the fact pattern that seems to be present in this case. *See Forrester v. White*, 484 U.S. 219, 225 (1988). It is overcome in only two sets of circumstances: where actions taken in the judge's nonjudicial capacity are at issue or when judicial actions are taken in the complete absence of all jurisdiction. *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991). This is an extremely high standard. *See Stump v. Sparkman*, 435 U.S. 349, 355–57 (1978). Even convicting individuals of crimes that do not exist falls short of acting in complete absence of all jurisdiction. *Stein v. Disciplinary Bd. of Supreme Court of N.M.*, 520 F.3d 1183, 1195 (10th Cir. 2008).

It appears that the basis of Escalante's claims are Chief Judge Droege's procedural docket entries on November 16, 2023, in Kansas Tenth Judicial District Cases No. 18-CV-03813 and No. 22-CV-03813, which transferred the cases for caseload management purposes. Doc. 12 at 5. Escalante argues that because the cases were transferred without notice, the transfer itself was a judicial act "in 'Clear absence of all Jurisdiction'." Doc. 1 at 5. He alternatively claims that the cases were not in fact transferred and that the entries were intentionally deceptive such that he was deprived of due process. *Id.* at 4–5.

Regardless of how Escalante's claims are characterized, the conduct described was not in "clear absence of all jurisdiction." Kansas courts have jurisdiction over child-custody disputes where, as here, Kansas is the child's home state. Kan. Stat. Ann. § 23-37, 201. In such cases, Kansas district judges "have and exercise [] full judicial power and authority." Kan. Stat. Ann. § 20-302. Undoubtedly, that includes the power to transfer a case for case management reasons. *Cf. Fletcher v. Tymkovich*, 786 F. App'x 826, 828 (10th Cir. 2019) (upholding judicial immunity in part because a judge's actions were "explicitly within the confines" of local and state rules and in part because "case management" is routine). In short, procedural case management orders, as the orders in this case appear to be, are a routine exercise of judicial power to control dockets. Judicial immunity thus bars Escalante's claims.

4

Given the applicability of judicial immunity, it is unnecessary to review the merits. Nonetheless a brief explanation of why each of Escalante's contentions fails on their own is warranted given Escalante is proceeding pro se and has repeatedly filed variations of these claims in similar circumstances.

Construing his references to racial bias as an equal protection theory, his theory fails because it is devoid of any supporting facts. He intimates that Chief Judge Droege was biased because Escalante is Hispanic, but he does not explain how that bias manifested or was connected to the complained-of transfers. Doc. 1 at 5. And even if he identified specific instances of ill-treatment (which he does not), he would then need evidence that similarly situated individuals who are not Hispanic were treated differently. *See Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012) (holding that though specific facts are not required to show discrimination in the Section 1983 context at the Rule 12 stage, some supporting facts are required)*; see also Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1234 (10th Cir. 2009) (denying a Fourteenth Amendment equal protection claim when there was no allegation that the action was taken because of membership in a suspect class or denied a fundamental right). Escalante fails to state a claim because he offers no such evidence.

Likewise, Escalante's procedural due process claim fails. A successful procedural due process claim must demonstrate a protected interest in "life, liberty, or property," and that a plaintiff was deprived of that interest without the appropriate level of process. *Mathews v. Eldridge*, 424 U.S. 319 (1976); *see also Camuglia v. The City of Albuquerque*, 448 F.3d 1214, 1219 (10th Cir. 2006). Even assuming judicial partiality and a lack of notice, it is hard to see how a procedural transfer order in a family law matter inherently deprives an individual of "life, liberty, or property," or their equivalent, absent extraordinary circumstances not present here. *Cf. Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972).

Finally, Escalante's Sixth Amendment claim fails. Transferring the case did not deprive Escalante of counsel. His counsel withdrew prior to the transfers. Doc. 1 at 5. But, in any event, the Sixth Amendment right to counsel only attaches in criminal cases, which his state court

5

cases were not. *See, e.g., Rothgery v. Gillespie Cnty., Tex.*, 554 U.S. 191, 195, (2008).[2]

Escalante is clearly upset and disappointed at the outcome of his state cases. *See* Docs. 19 and 20 (alleging, for example, that deciding against him violated state judicial conduct canons). And he appears to have found the legal system difficult and perplexing such that its requirements seem like a conspiracy to take away his rights. Those subjective grievances or feelings of disappointment at the outcome of state court family law cases, without more, do not make plausible lawsuits. *See Shophar v. Johnson Cnty., Kansas*, No. 20-CV-2280, 2020 WL 7248207 (D. Kan. Dec. 9, 2020), *aff'd*, No. 20-3248, 2021 WL 3502938 (10th Cir. Aug. 10, 2021).

Nevertheless, Chief Judge Droege's request for attorney's fees and costs is denied. Under 42 U.S.C. § 1988, a court may "in its discretion … allow the prevailing party [in a Section 1983 action] … a reasonable attorney's fee as part of the costs" awarded. Likewise, Rule 11 applies to pro se litigants, so Escalante's pro se status is not a bar to an award of reasonable fees and costs under Rule 11. *Corrigan v. Leclair*, 206 F. App'x 771, 773 (10th Cir. 2006) (awarding costs as a Rule 11 sanction in a frivolous appeal in which a pro se party advanced "indecipherable" arguments). Even so, when a losing Section 1983 plaintiff is pro se, "an attorney's fee award in favor of the defendant is … rare." *Weston v. Smith*, 384 F. App'x 696, 698 (10th Cir. 2010) (citing *Olsen v. Aebersold*, 149 F. App'x 750, 751 (10th Cir. 2005)). One is proper only when the pro se plaintiff actually recognizes his or her suit is objectively meritless, resulting in a suit filed solely to harass or embarrass the defendant. *Houston v. Noton*, 215 F.3d 1172, 1175 (10th Cir. 2000) (citing *Hensley v. Eckerhart*, 461 U.S. 424, n.2 (1983)); *see also Pennington v. Meyers*, No. 21-2591, 2022 WL 1154631 (D. Kan. Apr. 19, 2022).

Escalante's suit fails as a matter of substantive law. And it has the effect of harassing judicial officials and subjecting them to the costs of defending suit just for doing their job. But it is not clear that Escalante comprehended the frivolous nature of his claims. Court orders informing him that his claims lacked legal merit and barring him from filing

---

[2] There may be other reasons to grant the motion to dismiss. *See, e.g.*, *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (explaining that the *Rooker-Feldman* doctrine bars lower federal courts from sitting in direct review of state court decisions absent Congressional authorization of such relief).

6

similar suits without leave were filed, but only after he initiated this suit. *See Escalante v. Burmaster*, No. 23-CV-2471, 2023 WL 837310 (Doc. 58); *see also Escalante v. Escalante*, No. 23-2491, 2023 WL 8452046, at *2 (D. Kan. Dec. 6, 2023) ("Plaintiff is restricted from filing any documents or motions in this action, with the exception of responses and reply briefs to motions already pending or the forthcoming motions to dismiss, unless he first seeks leave from the court."). In such circumstances, an award of fees and costs against a pro se plaintiff is inappropriate under either Rule 11 or Section 1988.

## B

Escalante's miscellaneous motions are denied and any remaining claims in this case are dismissed.

Escalante's motion to strike, Doc. 16, is denied. He claims that the attorney signatures on several of Chief Judge Droege's pleadings, Docs. 11 and 12, are inconsistent with the "Administrative Rules" of the District of Kansas, which, in his view, require a signature block formatted "sequentially, its signature name, Name, Bar Number, Attorney for whom, and firm address downward until Telephone, fax, email." He argues this inconsistency means that those pleadings should be struck under Fed. R. Civ. P. 12(f). Doc. 16 at 1–2. That contention lacks merit and is rejected.

Escalante further requests an order requiring Chief Judge Droege recuse himself from Escalante's state court cases. Docs. 19 and 20. That claim is rejected because, among other things, the statute he invokes, 28 U.S.C. § 144, applies to judges presiding over federal matters only.

Escalante also seeks to "correct an illegal sentence," citing K.S.A. §§ 23-2707 and 60-1507. Doc. 23 at 2. He names several Gardner, Kansas officials as defendants. Doc. 23 at 1. And he references unspecified restraining orders asking that they not be enforced due to "no personal nor subject matter jurisdiction over Mr. Escalante." Doc. 23 at 1. While his pleading does not make clear precisely what Escalante is requesting, his request is denied because he has not established entitlement to any relief.

Escalante next asks that the rules of civil procedure be suspended and for a writ of habeas corpus. A single federal judge lacks the authority to suspend the rules and Escalante has not established a right

to habeas corpus. *See* Fed. R. Civ. P. 87(a) (giving "the Judicial Conference of the United States" the power to "declare a Civil Rules emergency" suspending the operation of the Federal Rules of Civil Procedure in "extraordinary circumstances"); *Lehman v. Lycoming Cnty. Children's Servs. Agency*, 458 U.S. 502, 511 (1982) (finding writ inapplicable to child custody disputes).

Finally, Escalante has filed two pleadings, styled as a "motion to intervene," Doc. 25, and a notice of intervention, Doc. 26, which are best interpreted as requests to require a Kansas agency to litigate on his behalf and/or to appoint counsel. Escalante has not established a basis to require an agency to intervene and there is no right to counsel in a civil case. *See*, *e.g.*, *Nelson v. Boeing Co.*, 446 F.3d 1118, 1120-22 (10th Cir. 2006).

## C

Escalante now faces filing restrictions in this District. As outlined in Judge Broomes's January 18, 2024 order, if Escalante seeks to file a new lawsuit in the District of Kansas and is proceeding pro se, he must first file a petition with the Clerk of Court requesting leave to file a complaint or other pleading. That petition must include a copy of Judge Broomes's order, a copy of the proposed complaint or pleading, a list of lawsuits filed involving similar claims, and a notarized affidavit indicating that the claims are not frivolous, made in bad faith, or already litigated and decided. Failure to follow these procedures will result in the summary rejection of any future case he attempts to file in this court. These restrictions apply regardless of which judge hears Escalante's petition.

## III

For the foregoing reasons, Chief Judge Droege's Motion to Dismiss, Doc. 11, is GRANTED in part and this case is dismissed. Fees and costs are not awarded. Doc. 21 is therefore DENIED. Escalante's extraneous motions, Docs. 16, 19, 20, 23, 24, 25, and 26 are DENIED.

It is so ordered.

Date: March 1, 2024                                s/ Toby Crouse
                                                                Toby Crouse
                                                                United States District Judge

8